UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| LINDA L. BISHOP, | ) | CIV. 06-5066-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER ON PREJUDGMENT |
| | ) | INTEREST AND MOTION |
| PENNINGTON COUNTY, a | ) | FOR ATTORNEYS' FEES |
| political subdivision of the State | ) | |
| of South Dakota, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff, Linda L. Bishop (Bishop), brought suit against defendant, Pennington County, claiming that she was sexually harassed and retaliated against for complaining about such harassment, in violation of Title VII, 42 U.S.C. § 2000(e) *et seq.*, and the South Dakota Human Rights Act of 1972, SDCL 20-13-1 *et seq.* The court granted summary judgment in favor of Pennington County on Bishop's Title VII hostile work environment claim and all of her state-law claims. Bishop's Title VII retaliation claim was tried to a jury. The jury found in favor of Bishop and awarded her $40,000 in lost wages and fringe benefits and found that she was entitled to prejudgment interest on $40,000 during the period from November 1, 2004, to November 1, 2008. The jury also awarded Bishop $60,000 for mental anguish, humiliation, and emotional pain and suffering. Both parties have submitted proposed calculations of the amount of prejudgment interest Bishop is entitled to receive. Bishop also moves for an award of attorneys' fees, sales tax, and costs.

**DISCUSSION**

**I.     Prejudgment Interest**

"Generally, [an] award of prejudgment interest, in the absence of statutory directives, rests in the discretion of the district court." Cargill, Inc. v. Taylor Towing Serv., Inc., 642 F.2d 239, 241 (8th Cir. 1981). Here, the court submitted to the jury the issue of whether Bishop is entitled to prejudgment interest on her damages for lost wages and fringe benefits. The jury found that Bishop is entitled to interest on $40,000 during the period of November 1, 2004, to November 1, 2008, so the court must determine the rate and amount of prejudgment interest.

Bishop proposes that the amount of prejudgment interest be calculated by dividing the $40,000 award into 17 monthly payments of $2,351.28, covering the period of November 1, 2004, through March 1, 2006, and 1 residual payment of $28.24 on April 1, 2006. Bishop suggests that the applicable interest rate is either 10 percent per year, as provided for by South Dakota law,[1] or the rate used by the Internal Revenue Service for underpayment of taxes set forth in 28 U.S.C. § 6621. Under Bishop's calculations, the total amount of prejudgment interest using the state rate is $13,408.99, and using the IRS rate is $9,373.50. Pennington County proposes that the court equally allocate the $40,000 award from November 1, 2004, to

---

[1] Under SDCL 21-1-13.1, the rate of prejudgment interest in a non-contract case is "the Category B rate of interest specified in § 54-3-16." Under SDCL 54-3-16(2), the Category B rate of interest is 10 percent per year.

November 1, 2008, and use as the interest rate the average 1-year constant maturity Treasury yield referenced in 28 U.S.C. § 1961. Under Pennington County's calculations, the total amount of prejudgment interest is $3,263.37.

With respect to the allocation of the $40,000 award, the court agrees with Pennington County that the award should be equally allocated from November 1, 2004, to November 1, 2008. The jury specifically found that Bishop is entitled to prejudgment interest during that 48-month period, so Bishop's proposed calculation runs contrary to the express intent of the jury.

With respect to the rate of prejudgment interest, "[t]he question of whether interest is to be allowed, and also the rate of computation, is a question of federal law where the cause of action arises from a federal statute." Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1330 (8th Cir. 1995) (quoting Dependahl v. Falstaff Brewing Corp., 653 F.2d 1208, 1218 (8th Cir. 1981)). Here, the only claim submitted to the jury was Bishop's retaliation claim, which arose under Title VII, a federal statute. Her state-law claims were dismissed prior to trial. Thus, federal law governs the rate of prejudgment interest. The United States Court of Appeals for the Eighth Circuit has found that in cases arising under a federal statute, "28 U.S.C. § 1961 provides the proper measure for determining rates of both prejudgment and postjudgment interest." Id. at 1331. Section 1961 provides that interest shall be calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System." 28

U.S.C. § 1961(a). Interest under § 1961 shall be computed daily and compounded annually. 28 U.S.C. § 1961(b).

Pennington County used the average 1-year constant maturity Treasury yield as the rate of interest in its proposed calculation of Bishop's prejudgment interest, but failed to compound the interest annually. The court finds that Pennington County's calculation is reasonable, except that Bishop is entitled to the additional amount of interest she would earn if interest were compounded annually. Based on the court's calculations, Pennington County's proposed finding of $3,263.37 in prejudgment interest should be increased by $431.25 to reflect interest compounded annually. Bishop is entitled to recover $3,694.62 in prejudgment interest.

## II. Attorneys' Fees

In a Title VII action, the court may award the "prevailing party . . . a reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k). The $100,000 verdict against Pennington County makes Bishop a prevailing party, thereby entitling her to a reasonable attorneys' fee award. "The proper method for determining a reasonable attorney's fee is to multiply the number of hours reasonably expended on the litigation times a reasonable hourly rate." McDonald v. Armontrout, 860 F.2d 1456, 1458 (8th Cir. 1988) (internal quotation omitted). The resulting product is called the "lodestar," which is presumed to be the reasonable fee to which counsel is entitled. Id. (quoting Pennsylvania v. Del. Valley Citizens' Council for Clean Air, 478 U.S. 546, 564, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986)). The court should

consider the factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974), to set the reasonable number of hours and reasonable hourly rate components of the fee award formula. Id. at 1459. These factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Delaware Valley, 478 U.S. at 562 (citing Johnson, 488 F.2d at 717-19).

The determination of the lodestar does not end the inquiry. "There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'" Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983). In determining whether to adjust the award, the court may also consider the other Johnson factors, but the "results obtained" factor is particularly important where the plaintiff succeeded on only some of her claims for relief. Id. at 434 n.9.

**A.  Lodestar**

First, the court must determine the number of hours reasonably expended by Bishop's attorneys, and the reasonable hourly rate for their

services. The court will consider the relevant <u>Johnson</u> factors in making this determination.

### 1. Time and Labor Required

Bishop requests an award of fees for work performed by 5 attorneys and 2 paralegals. She initially requested compensation for 451.7 hours of work performed by the attorneys and 157.5 hours of work performed by the paralegals, but adjusted several time entries in response to Pennington County's objections to her initial request and to reflect time spent preparing her motion for attorneys' fees. Bishop's initial and adjusted requests are listed below:

| **Attorney** | **Hours (Initial)** | **Hours (Adjusted)** |
|---|---|---|
| Michael M. Hickey | 171.8 | 176.8 |
| Daniel F. Duffy | 129.9 | 132.5 |
| Jeffrey G. Hurd | 0.3 | 0.3 |
| Sara L. Larson | 2.0 | 2.0 |
| Sarah E. Baron Houy | 147.7 | 147.4 |
| TOTAL | 451.7 | 459.0 |
| **Paralegal** | **Hours (Initial)** | **Hours (Adjusted)** |
| Beth Ann Halvorson | 148.0 | 146.4 |
| Karen L. Martin | 9.5 | 9.5 |
| TOTAL | 157.5 | 155.9 |

Pennington County objects to the number of hours claimed on several grounds. First, Pennington County argues that the number of hours worked by Bishop's attorneys should be reduced by 15 percent because nearly all of

6

their time entries are block-billed. "The term 'block billing' refers to the time keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." McDannel v. Apfel, 78 F. Supp. 2d 944, 946 n.1 (S.D. Iowa 1999) (quoting Robinson v. City of Edmond, 160 F.3d 1275, 1284 n.9 (10th Cir. 1998)). "[T]he Eighth Circuit has no requirement against the use of block billing." King v. Turner, Civil No. 05-388 (JRT/FLN), 2007 WL 1219308, at *3 (D. Minn. Apr. 24, 2007). But the Eighth Circuit has expressed displeasure with generalized billing that hinders the court's ability to conduct a meaningful review of the fee application and has authorized district courts to apply a percentage reduction for inadequate documentation. See Miller v. Woodharbor Molding & Millworks, Inc., 174 F.3d 948, 949-50 (8th Cir. 1999).

The court has reviewed Bishop's billing statement and finds that there are several block-billed entries for Attorney Hickey, Attorney Duffy, and Attorney Baron Houy and for Paralegal Halvorson. Most of these entries are for the week before and week of the trial, when a generalized "prepare for trial" is sufficient to allow the court to meaningfully review the reasonableness of the hours expended. Attorney Baron Houy's time entry from October 24, 2007, is representative of the non-trial related block-billed time entries in this case. This entry reads, "Continue drafting Brief. Conference with Attorney Hickey re exhaustion of admin remedies and SOL claims; conduct caselaw research into the same; locate Morgan case for support. Locate 8th Cir. caselaw standing for

7

the proposition that summary judgment should be rarely granted in employment discrimination cases." Docket 95-7 at 7. Attorney Baron Houy recorded 7.0 hours for this work. While this time entry does not indicate how many minutes were spent on each particular task, it is sufficiently specific to communicate what work was done and its connection to the case. "Defendant's position that counsel should be required to more specifically detail how his/her time was expended would place a tremendous burden on any counsel and would result in inefficient utilization of counsel's time." Monsanto Company v. David, No. 4:04CV425HEA, 2006 WL 2669076, at *1 (E.D. Mo. Sept. 14, 2006). Upon review of Bishop's entire billing statement, the court finds that it sufficiently details the actions taken by the attorneys and the paralegals to allow for meaningful review of the hours expended, so a percentage reduction for block billing is unwarranted here.

Second, Pennington County objects to the hours incurred by Attorney Baron Houy. Pennington County contends that an award of fees for 29.2 hours spent by Attorney Baron Houy preparing for and attending trial would be unreasonable because Attorney Baron Houy did not participate at trial. Bishop concedes that the time Attorney Baron Houy spent at trial is not properly billable, and reduced Attorney Baron Houy's time entries by 23.2 hours. Bishop did not eliminate the time Attorney Baron Houy spent researching during trial or working with Attorneys Hickey and Duffy on trial strategy and preparation. The court finds that Attorney Baron Houy's time spent

8

researching and preparing for trial on the days of trial is reasonable and accepts Bishop's adjustments to Attorney Baron Houy's time entries.

Pennington County also argues that it would be unreasonable to award a fee for the time Attorney Baron Houy spent attending depositions that she did not conduct. Bishop correctly points out that Attorney Baron Houy actually conducted the deposition of Dale Anders. She further argues that Attorney Baron Houy needed to attend the deposition of Rick Burden, which happened the same day, to conduct a thorough deposition of Anders. The court finds that the 7 hours Attorney Baron Houy spent conducting and observing the depositions of Anders and Burden was reasonable. Similarly, it was reasonable for Attorney Baron Houy to spend 3 hours preparing for and attending the deposition of Roger Jagim. Bishop represents that at the time of Jagim's deposition on September 4, 2008, it was clear that the case would go to trial, and Bishop's attorneys planned for Attorneys Baron Houy and Hickey to represent Bishop at trial. Pennington County's objections to Attorney Baron Houy's time are overruled.

Third, Pennington County objects to the hours incurred by Attorney Duffy, who began working on the case three weeks before trial. Pennington County contends that it was unreasonable to bring in a third attorney prior to trial when Attorney Hickey and Attorney Baron Houy had been working on the case from its inception. "A court may reduce attorney hours, and consequently fees, for inefficiency or duplication of services in cases where more than one

9

attorney is used." A.J. ex rel. L.B. v. Kierst, 56 F.3d 849, 864 (8th Cir. 1995). Here, the court finds that most of the time Attorney Duffy spent on the case did not duplicate the services of Attorney Hickey and Attorney Baron Houy, so most of his hours were reasonable. Contrary to Pennington County's assertion that Attorney Duffy incurred about 100 hours of "catch-up" time, Attorney Duffy only worked 3.5 hours reviewing depositions, pleadings, jury instructions, and pretrial submissions prior to the pretrial conference. Docket 95-7 at 5. The court excludes this 3.5 hours as duplicative. The remainder of Attorney Duffy's hours were spent attending the pretrial conference, working on jury instructions, preparing for his examinations of Anders and Jagim, attending trial, and preparing for his closing argument. The court finds nothing unreasonable about Bishop's decision to include a third attorney in these aspects of trial preparation and participation, especially considering that Attorney Baron Houy became ill shortly before trial and could not participate in trial, and that Bishop will not be awarded fees for Attorney Baron Houy's time spent observing the trial. See Delph v. Dr. Pepper Bottling Co. of Paragould, Inc., 130 F.3d 349, 358-59 (8th Cir. 1997) (finding no abuse of discretion in award of attorneys' fees for work of third attorney who billed only 62 hours, whose billings were not duplicative of co-counsel's work, and who was an active participant at trial).

Pennington County also objects to Attorney Duffy's time entries as too vague to determine their reasonableness. But because the court was able to

review the proposed jury instructions and other pretrial submissions filed by Bishop and to observe Attorney Duffy's performance in trial, his block-billed entries for the weeks leading up to and during trial are not too vague for the court to conduct a meaningful review of his hours. Pennington County's objections to Attorney Duffy's time are granted in part and overruled in part. Attorney Duffy's time will be reduced by 3.5 hours.

Finally, Pennington County objects to Paralegal Halvorson's time as duplicative of attorneys' time and requests that the court award no recovery for her time. "Paralegal fees should be allowed if reasonable and not duplicative of other legal fees." Hawkins v. Anheuser-Busch, Inc., 697 F.2d 810, 817 (8th Cir. 1983). The court has reviewed Paralegal Halvorson's time entries and finds that her time was duplicative of tasks performed by Attorney Hickey and Attorney Baron Houy on a number of dates and thereby reduces her compensable time by 7.5 hours.[2] Pennington County also argues that many of Paralegal Halvorson's time entries indicate secretarial work that is not properly

---

[2] The court reduced Paralegal Halvorson's time by 0.3 hours on August 23, 2006, 0.2 hours on August 30, 2006, 0.3 hours on October 4, 2006, 0.3 hours on March 5, 2007, 0.2 hours on March 27, 2007, 0.3 hours on June 29, 2007, 0.2 hours on August 7, 2007, 0.1 hours on August 13, 2007, 0.1 hours on August 17, 2007, 1.0 hours on August 28, 2008, 0.4 hours on August 31, 2007, 0.3 hours on September 7, 2007, 0.4 hours on October 1, 2007, 1.2 hours on October 2, 2007, 0.2 hours on October 11, 2007, 0.1 hours on October 12, 2007, 0.3 hours on November 14, 2007, 0.2 hours on February 28, 2008, 0.3 hours on May 7, 2008, 0.2 hours on June 3, 2008, 0.2 hours on September 17, 2008, 0.3 hours on October 28, 2008, and 0.4 hours on November 12, 2008.

billable as paralegal work. Bishop concedes that some tasks performed by Paralegal Halvorson, namely downloading and saving documents, should be included as overhead rather than compensable attorneys' fees. Bishop reduced several of Paralegal Halvorson's time entries to account for these tasks, which resulted in a total reduction of 5.1 hours. The court has reviewed Paralegal Halvorson's revised time entries and finds that Bishop has accurately eliminated secretarial tasks performed by Paralegal Halvorson. The court will not further reduce Paralegal Halvorson's hours for this reason. Pennington County's objections to Paralegal Halvorson's time are granted in part and denied in part. Paralegal Halvorson's time will be reduced by 7.5 hours.

Bishop requests that the attorneys' fee award in this case include the time incurred litigating her attorneys' fee request. Time spent litigating the request for attorneys' fees, including preparation of the motion and accompanying brief, can be recovered as a component of Bishop's attorneys' fees. See Jones v. MacMillan Bloedel Containers, Inc., 685 F.2d 236, 239 (8th Cir. 1982). Pennington County does not object to Bishop's request for these costs. The court has reviewed the supporting documentation submitted by Bishop in relation to this request and finds an award in the amount of $5,569 for the time associated with Bishop's attorneys' fees request to be reasonable.

### 2. Experience, Reputation, and Ability of Attorney

Bishop requests that Attorney Hickey, Attorney Duffy, and Attorney Hurd be compensated at a rate of $180 per hour, that Attorney Larson and Attorney

Baron Houy be compensated at a rate of $150 per hour, and that Paralegal Halvorson and Paralegal Martin be compensated at a rate of $65 per hour. Pennington County does not object to the requested rates for Attorneys Hickey, Duffy, Hurd, or Larson, or to the requested rates for Paralegals Halvorson or Martin. Pennington County does object to the requested rate for Attorney Baron Houy and suggests that the reasonable rate is $135 per hour.

The court finds that $150 per hour is a reasonable rate for Attorney Baron Houy's services. Attorney Baron Houy graduated from law school in 2006 and clerked for the Fifth Judicial Circuit Court in South Dakota before entering private practice. It appears that she began working on this case in August 2007, shortly after she began working for the law firm with which Bishop's attorneys are affiliated. In Kahle v. Leonard, No. CIV 04-5024-KES, 2008 WL 2776494, at *4 (D.S.D. July 14, 2008), aff'd in part and remanded in part, ___ F.3d ___, 2009 WL 1109847 (8th Cir. 2009), this court awarded attorneys' fees at a rate of $150 per hour, the maximum rate allowed under the applicable statute, for associates with similar experience to Attorney Baron Houy. See also Docket 95-5 (attorney profile for Brad J. Lee); Docket 95-6 (attorney profile for Anthony P. Bolson). Similarly, in Jadari v. Shiba Inv., Inc., Civ. Nos. 06-5012-RHB, 06-5019-RHB, 06-5020-RHB, 06-5037-RHB, 06-5050-RHB, 2008 WL 5100812, at *7 (D.S.D. Dec. 3, 2008), the court found that the reasonable hourly rate for an associate who graduated from law school in 2006 and completed a one-year judicial clerkship before entering private

13

practice in 2007 was $150 per hour.  See also Docket 95-4 (attorney profile for Jeffrey R. Connolly).  Based on these recent cases from the District of South Dakota, the court finds that the reasonable rate for Attorney Baron Houy's services is $150 per hour.  Pennington County's objection to Bishop's requested rate for Attorney Baron Houy is overruled.

The court has considered the remaining Johnson factors and finds that they do not weigh in favor of increasing or decreasing the number of compensable hours or the hourly rate for Bishop's attorneys.  Thus, the lodestar amount is $87,154, as set forth below:

| Name | Hours | Rate | Total |
| --- | --- | --- | --- |
| Michael M. Hickey | 176.8 | $180 | $31,824.00 |
| Daniel F. Duffy | 129.0 | $180 | $23,220.00 |
| Jeffrey G. Hurd | 0.3 | $180 | $54.00 |
| Sara L. Larson | 2.0 | $150 | $300.00 |
| Sarah E. Baron Houy | 147.4 | $150 | $22,110.00 |
| Beth Ann Halvorson | 138.9 | $65 | $9,028.50 |
| Karen L. Martin | 9.5 | $65 | $617.50 |
| TOTAL | 603.9 | | $87,154.00 |

**B.   Adjustment**

Next the court must determine whether to adjust the fee upward or downward.  Bishop requests a 30 percent enhancement to reflect the risk of loss arising from her contingency fee agreement and the degree of success obtained.  Pennington County objects to an enhancement.  Pennington County

argues that Bishop achieved limited success on her claims, but does not request a percentage reduction on this ground. In determining whether to apply an enhancement in this case, the most important factor is the results obtained. Hensley, 461 U.S. at 434 n.9. "When a plaintiff has prevailed on some, but not all of . . . her claims, the court should consider the potential impact of partial success on the fee award[.]" Wal-Mart Stores, Inc. v. Barton, 223 F.3d 770, 772 (8th Cir. 2000). As the Supreme Court has explained,

> [w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have [her] attorney's fee reduced simply because the district court did not adopt each contention raised. But, where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

Hensley, 461 U.S. at 440. The risk of loss arising from the contingent fee arrangement may also weigh in favor of an enhancement if Bishop shows "that enhancement [is] necessary to attract competent local counsel in light of the risk of loss arising from the [applicant's] contingency fee arrangement." Gilbert v. City of Little Rock, Ark., 867 F.2d 1063, 1068 (8th Cir. 1989). Bishop "bear[s] a heavy burden in proving entitlement to an increase for risk or quality." Paschall v. Kan. City Star Co., 695 F.2d 322, 337 (8th Cir. 1982).

Bishop achieved partial success in this case. She prevailed on her Title VII retaliation claim at trial, but her Title VII hostile work environment and state-law claims were dismissed at the summary judgment stage. Although Bishop only achieved partial success with respect to the claims she raised in

her complaint, all of her claims are factually related and the $100,000 jury verdict on her retaliation claim constitutes substantial relief. See Wal-Mart, 223 F.3d at 773 (finding that $25,000 judgment was significant in light of the fact that the jury's verdict served to vindicate personal rights and to further the public's interest in providing a fair playing field in the work world). Thus, a downward adjustment for lack of success is not appropriate in this case.

But the results obtained do not warrant an enhancement. An enhanced award is only justified in a case "of exceptional success." Hensley, 461 U.S. at 435. Here, Bishop sought recovery under two independent theories—hostile work environment and retaliatory discharge—and was successful under one. The fact that Bishop recovered nothing under one independent claim for relief suggests that this is not a case of exceptional success.[3] Similarly, the fact that Bishop's attorneys entered into a contingent fee arrangement with Bishop does

---

[3] Bishop cites Sturgill v. United Parcel Serv., Inc., 512 F.3d 1024 (8th Cir. 2008) as support for her request for an enhancement. Sturgill does not support an enhancement in this case. In Sturgill, the court did not apply an enhancement, but rather declined to reduce the fee due to partial success. 512 F.3d at 1036. Further, in Sturgill, the plaintiff alleged two different unlawful discharge theories, and the jury found in his favor on one and in favor of the defendant on the other. Id. The plaintiff's theories in Sturgill were alternative legal theories. Here, Bishop's hostile work environment and retaliatory discharge claims are two distinct theories, not alternative discharge theories. Because the plaintiff in Sturgill was more successful than Bishop, and the Sturgill court did not apply an enhancement, that case does not support an enhancement here. The fact that the lodestar amount in Sturgill ($120,258.74) is approximately the same amount sought by Bishop after a 30 percent enhancement is irrelevant. Bishop is entitled to an award that reflects the reasonable time incurred by her attorneys, not the time incurred in another case.

16

not justify an enhancement. The court recognizes the risk inherent in such an arrangement, but finds that Bishop has not met her burden of showing that an enhancement is necessary to attract competent local counsel to take on employment discrimination cases on a contingent fee basis.

In declining to apply an enhancement, the court does not intend to downplay the high-quality services provided by Bishop's attorneys throughout this case. Rather, the court finds that Bishop has not met her heavy burden of proving that she is entitled to an enhancement. The quality of work rendered by counsel for Bishop is already reflected in their hourly rates and the court's award of fees for almost all of their time incurred in this case. The court finds that the reasonable attorneys' fee in this case is $87,154 plus sales tax of $5229.24 and awards Bishop that amount.

## III. Costs

Bishop requests $3,835.86 in taxable costs and filed a Bill of Costs reflecting the same. Pennington County filed exceptions to Bishop's Bill of Costs, objecting to Bishop's requests for computerized legal research expenses and the expense of service of process upon Burden, who was dismissed from the case. The Clerk of Courts excluded these costs and issued a taxation of costs against Pennington County in the amount of $2,861.31. Docket 96. The Clerk of Courts properly excluded the costs for legal research and service of process upon Burden, as these categories are not allowable as costs under 28 U.S.C. § 1920. Further, the Eighth Circuit has held that "computer-based legal

17

research must be factored into the attorneys' hourly rate, [so that] the cost of the computer time may not be added to the fee award." Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 325 (8th Cir. 1993). Thus, Bishop is not entitled to an additional award of costs.

Accordingly, it is hereby

ORDERED that Bishop is awarded $3,694.62 for prejudgment interest.

IT IS FURTHER ORDERED that Bishop's motion for attorneys' fees, sales tax, and costs (Docket 88) is granted in the amount of $92,383.24 for attorneys' fees and sales tax.

Dated May 14, 2009.

       BY THE COURT:

       /s/ *Karen E. Schreier*
       KAREN E. SCHREIER
       CHIEF JUDGE